102 P.3d 1044

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Larry RIVERA, Defendant–Appellant.**

No. 26199.

Supreme Court of Hawai'i.

Dec. 22, 2004.

James S. Tabe, deputy public defender, on the briefs, for the defendant-appellant Larry Rivera.

James M. Anderson, deputy prosecuting attorney, on the briefs, for the plaintiff-appellee State of Hawai'i.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ.; and ACOBA, J., dissenting with whom DUFFY, J. joins.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Larry Rivera appeals from the judgment of the circuit court of the first circuit, the Honorable Derrick H.M. Chan presiding, filed on October 8, 2003, convicting him of and sentencing him for the following offenses: (1) promoting a dangerous drug in the third degree, in violation of Hawai'i Revised Statute (HRS) § 712–1243 (1993 & Supp.2003);[1] (2) unlawful use of drug paraphernalia, in violation of HRS § 329–43.5(a) (1993);[2] and (3) promoting a detrimental drug in the third degree, in violation of HRS § 712–1249 (1993).[3] On appeal, Rivera contends that the circuit court erred as follows: (1) in granting the motions of the State of Hawai'i [hereinafter, "the prosecution"] for (a) an extended term of imprisonment as a "persistent offender," pursuant to HRS § 706–662(1) (1993 & Supp. 2003),[4] and (b) extended terms of imprisonment as a "multiple offender," pursuant to HRS § 706–662(4)(a) (1993 & Supp.2003), see supra note 4, inasmuch as the jury did not

1. HRS § 712–1243 provides:

(1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.

(2) Promoting a dangerous drug in the third degree is a class C felony.

(3) Notwithstanding any law to the contrary, except for first-time offenders sentenced under section 706–622.5, if the commission of the offense of promoting a dangerous drug in the third degree under this section involved the possession or distribution of methamphetamine, the person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment, the length of which shall be not less than thirty days and not greater than two-and-a-half years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory period of imprisonment.

2. HRS § 329–43.5(a) provides:

It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

3. HRS § 712–1249 provides:

(1) A person commits the offense of promoting a detrimental drug in the third degree if the person knowingly possesses any marijuana or any Schedule V substance in any amount.

(2) Promoting a detrimental drug in the third degree is a petty misdemeanor.

4. HRS § 706–662 provides in relevant part:

**Criteria for extended terms of imprisonment.** A convicted defendant may be subject to an extended term of imprisonment under section 706–661, if the convicted defendant satisfies one or more of the following criteria:

(1) The defendant is a persistent offender whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older.

. . . .

(3) The defendant is a dangerous person whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless the defendant has been subjected to a psychiatric or psychological evaluation that documents a significant history of dangerousness to others resulting in criminally violent conduct, and this history makes the defendant a serious danger to others. Nothing in this section precludes the introduction of victim-related data in order to establish dangerousness in accord with the Hawaii rules of evidence.

(4) The defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless:

(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or

decide that such extended terms of imprisonment were necessary for the protection of the public, and, therefore, the extended term sentences imposed by the circuit court ran afoul of the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), compelling this court to "strike down Hawaii's extended term sentencing scheme and to overrule *State v. Kaua*, 102 Hawai'i 1, 72 P.3d 473 (2003)[,] and *State v. Hauge*, 103

Hawai'i 38, 79 P.3d 131 (2003)"; [5] and (2) in sentencing him to a mandatory minimum term of imprisonment of three years and four months for his conviction of unlawful use of drug paraphernalia, pursuant to HRS § 329-43.5(a), inasmuch as unlawful use of drug paraphernalia is not one of the enumerated class C felonies in HRS § 706-606.5 (1993 & Supp.2003).[6]

The prosecution counters, *inter alia*, that (1) Rivera was properly sentenced to extend-

(b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively, would equal or exceed in length the maximum of the extended term imposed or would equal or exceed forty years if the extended term imposed is for a class A felony.

(5) The defendant is an offender against the elderly, handicapped, or a minor under the age of eight, whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:

(a) The defendant attempts or commits any of the following crimes: murder, manslaughter, a sexual offense that constitutes a felony under chapter 707, robbery, felonious assault, burglary, or kidnapping; and

(b) The defendant, in the course of committing or attempting to commit the crime, inflicts serious or substantial bodily injury upon a person who is:

(i) Sixty years of age or older;

(ii) Blind, a paraplegic, or a quadriplegic; or

(iii) Eight years of age or younger; and

(c) Such disability is known or reasonably should be known to the defendant.

(6) The defendant is a hate crime offender whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:

(a) The defendant is convicted of a crime under chapter 707, 708, or 711; and

(b) The defendant intentionally selected a victim, or in the case of a property crime, the property that was the object of a crime, because of hostility toward the actual or perceived race, religion, disability, ethnicity, national origin, gender identity or expression, or sexual orientation of any person. For purposes of this subsection, "gender identity or expression" includes a person's actual or perceived gender, as well as a person's gender identity, gender-related self-image, gender-related appearance, or gender-related expression; regardless of whether that gender identity, gender-related self-image, gender-related appearance, or

gender-related expression is different from that traditionally associated with the person's sex at birth.

5. We decline Rivera's invitation to overrule *Kaua* and *Hauge* for the reasons discussed *infra* in Section III.A.

6. HRS § 706-606.5 provides in relevant part:

**Sentencing of repeat offenders.** (1) Notwithstanding section 706-669 and any other law to the contrary, any person convicted of murder in the second degree, any class A felony, any class B felony, or any of the following class C felonies: section 188-23 relating to possession or use of explosives, electrofishing devices, and poisonous substances in state waters; section 707-703 relating to negligent homicide in the first degree; 707-711 relating to assault in the second degree; 707-713 relating to reckless endangering in the first degree; 707-716 relating to terroristic threatening in the first degree; 707-721 relating to unlawful imprisonment in the first degree; 707-732 relating to sexual assault or rape in the third degree; 707-735 relating to sodomy in the third degree; 707-736 relating to sexual abuse in the first degree; 707-751 relating to promoting child abuse in the second degree; 707-766 relating to extortion in the second degree; 708-811 relating to burglary in the second degree; 708-821 relating to criminal property damage in the second degree; 708-831 relating to theft in the first degree as amended by Act 68, Session Laws of Hawaii 1981; 708-831 relating to theft in the second degree; 708-835.5 relating to theft of livestock; 708-836 relating to unauthorized control of propelled vehicle; 708-852 relating to forgery in the second degree; 708-854 relating to criminal possession of a forgery device; 708-875 relating to trademark counterfeiting; 710-1071 relating to intimidating a witness; 711-1103 relating to riot; 712-1203 relating to promoting prostitution in the second degree; 712-1221 relating to gambling in the first degree; 712-1224 relating to possession of gambling records in the first degree; *712-1243 relating to promoting a dangerous drug in the third degree;* 712-1247 relating to promoting a detrimental drug in the first degree; 134-7 relating to

ed terms of imprisonment because (a) HRS §§ 706–662(1) and (4) pass constitutional muster under *Apprendi* and *Kaua*, and (b) the United States Supreme Court's decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), does not alter this court's holding in *Kaua*, and (2) the record demonstrates that Rivera was properly sentenced as a repeat offender.

Rivera responds that "pursuant to the United States Supreme Court's recent decision in *Blakely v. Washington*, the Hawai'i extended term sentencing scheme, which allows a judge to find enhancement facts, denied [him] of his right to a jury trial."

We note that this court's analysis and decision in *Kaua* dispose of Rivera's first point of error on appeal. Accordingly, we would not address Rivera's argument that *Kaua* is unconstitutional in another published opinion were it not for *Blakely*, which was handed down on June 24, 2004 and cited by the prosecution in its answering brief and which affirms *Apprendi* and focuses on the defects of determinate sentencing guidelines. Thus, the present matter addresses the question whether *Blakely* calls the continuing viability of our analysis in *Kaua* into question.[7]

We hold that Hawai'i's extended term sentencing scheme is not incompatible with *Blakely v. Washington*, inasmuch as (1) *Blakely* addresses only statutory "determinate" sentencing "guideline" schemes, and (2) this court's "intrinsic-extrinsic" analysis culminating in *Kaua* is compatible with both *Blakely* and *Apprendi*. Additionally, we hold that the circuit court properly sentenced Rivera as a repeat offender.

## I. BACKGROUND

On September 27, 2002, the prosecution charged Rivera by complaint with the follow-

---

ownership or possession of firearms or ammunition by persons convicted of certain crimes; 134–8 relating to ownership, etc., of prohibited weapons; 134–9 relating to permits to carry, or who is convicted of attempting to commit murder in the second degree, any class A felony, any class B felony, or any of the class C felony offenses enumerated above and who has a prior conviction or prior convictions for the following felonies, including an attempt to commit the same: murder, murder in the first or second degree, a class A felony, a class B felony, any of the class C felony offenses enumerated above, or any felony conviction of another jurisdiction shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:

. . . .

(b) Two prior felony convictions:

. . . .

 (iv) Where the instant conviction is for a class C felony offense enumerated above—three years, four months;

. . . .

(2) Except as in subsection (3), a person shall not be sentenced to a mandatory minimum period of imprisonment under this section unless the instant felony offense was committed during such period as follows:

. . . .

 (d) Within ten years after a prior felony conviction where the prior felony conviction was for a class B felony[.]

(Emphasis added.)

**7.** We further note that on December 9, 2004, the United States District Court for the District of Hawai'i, the Honorable Susan Oki Mollway presiding, filed an order in *Kaua v. Frank*, Civ. No. 03–00432 SOM/BMK, 350 F.Supp.2d 848, 2004 WL 2980265 (D.Haw. Dec. 9, 2004), granting Kaua's petition, pursuant to 28 United States Code (U.S.C.) § 2254(d)(1) (2003), to vacate his extended sentence. 28 U.S.C. § 2254(d)(1) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

The district court held that this court's conclusion in *Kaua*, 102 Hawai'i 1, 72 P.3d 473, "that Kaua's extended sentence did not violate *Apprendi* was contrary to, and involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court." *Kaua v. Frank*, 350 F.Supp.2d at 856, 2004 WL 2980265. The district court also noted that "[w]hile circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Kaua v. Frank*, 350 F.Supp.2d at 856 n.6, 2004 WL 2980265 (quoting *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.)), *cert. denied*, 540 U.S. 968, 124 S.Ct. 446, 157 L.Ed.2d 313 (2003). Accordingly, we decline to follow the district court's analysis, which substantially mirrors Justice Acoba's.

ing offenses: (1) promoting a dangerous drug (Count I), in violation of HRS § 712–1243, *see supra* note 1; (2) unlawful use of drug paraphernalia (Count II), in violation of HRS § 329–43.5(a), *see supra* note 2; and (3) promoting a detrimental drug in the third degree (Count III), in violation of HRS § 712–1249, *see supra* note 3. The following facts were adduced at Rivera's jury trial, which commenced on July 10, 2003 and ended on July 11, 2003.

On September 19, 2002, at approximately 8:55 a.m., Recardo Basuil, a security guard posted at the Island Colony Hotel (the Hotel), responded to a report from the Hotel's front desk that there was someone sleeping on the twenty-sixth floor. Basuil proceeded to the twenty-sixth floor where he found Rivera sleeping in the hallway. Basuil approached Rivera and, within two feet of him, observed a small plastic bag and an "ice pipe" on the floor two inches from Rivera. Upon recognizing the two items as drug paraphernalia, Basuil directed the Hotel's front desk to notify the Honolulu Police Department (HPD). HPD Officers Choy, Nakasone, and Ho'okano thereafter arrived at the Hotel. Officer Choy approached Rivera, who was still sleeping in the hallway, and observed a glass pipe with a bulbous end and a clear plastic "baggy" with a marijuana leaf design printed on it on the floor beside him. Officer Choy took photographs of Rivera and the glass pipe and plastic baggy where they lay. Based on his training and experience, Officer Choy identified the glass pipe as being of the type used to heat crystal methamphetamine and inhale its vapors. Officer Choy also observed that the bulbous portion of the pipe contained a black and white residue, which he judged to be crystal methamphetamine after it has been heated.

Officer Ho'okano placed Rivera under arrest for the promotion of dangerous drugs in the third degree, and Officer Choy proceeded to conduct a search incident to Rivera's arrest. Officer Choy recovered a small plastic bag containing a leafy vegetable matter and a second small plastic bag containing a crystal-like substance from Rivera's front pocket. HPD criminalist Stacy Riede testified that, through testing, she determined that the lea-

fy vegetable matter was marijuana and that the crystal-like substance was crystal methamphetamine.

On July 11, 2003, the jury returned a verdict of guilty as charged on all three counts.

On August 6, 2003, the prosecution filed the following motions: (1) a motion for extended terms of imprisonment as a multiple offender, pursuant to HRS § 706–662(4)(a), *see supra* note 4; (2) a motion for extended term of imprisonment as a persistent offender, pursuant to HRS § 706–662(1), *see supra* note 4; and (3) a motion for sentencing as a repeat offender, pursuant to HRS § 706–606.5, *see supra* note 6.

The circuit court conducted a sentencing hearing on October 8, 2003, during which it considered the prosecution's two motions for extended terms of imprisonment and the motion for sentencing as a repeat offender. Rivera opposed the prosecution's motions, but expressly stated that he understood that "the repeat offender statute applies here and that this [c]ourt has an obligation to impose a mandatory minimum[.]" The circuit court granted all three of the prosecution's motions and orally sentenced Rivera as follows:

> THE COURT: . . . [A]lthough you come today and say that you [are] making good efforts, and I do commend you for that, I believe, in this particular instance, the [prosecution's] motion for extended term is warranted. So, therefore, the [prosecution's] motions for extended term[s] [are] granted. I will not order the terms to be consecutive, but I think there has to be a point in your life for you to take a step forward [rather] than just applying to programs after your trial, and you take a step further. The extensive criminal history, I think it has to be checked and double checked, not by the system, but by yourself to make sure you try, and this is really what you want to do.
>
> So, in Count 1, I'll sentence you to 10 years; in Count 2, 10 years; in Count 3, 30 days. In Counts 1 and 2, mandatory minimum sentence of three years and four months.

On October 13, 2003, the circuit court filed a written order granting the prosecution's motion for sentencing as a repeat offender, which stated the following:

[T]he [c]ourt having found that [Rivera] is a repeat offender, pursuant to Section 706–606.5 of the Hawai['']i Revised Statutes [ (HRS) ], based on [Rivera's prior] conviction for the offense of Promoting a Dangerous Drug in the Second Degree, pursuant to Section 712–1242 of the [HRS], under Criminal No. 95–2564, and [Rivera's prior] conviction for the offense of Promoting a Dangerous Drug in the Second Degree, pursuant to Section 712–1242 of the [HRS], under Criminal No. 96–1456, and being fully advised in the premises and having orally granted said Motion for Sentencing of Repeat Offender,

IT IS HEREBY ORDERED that the aforesaid motion be[,] and the same is[,] hereby granted, and [Rivera] is sentenced to a mandatory minimum term of imprisonment of three (3) years and four (4) months without the possibility of parole.

On November 3, 2003, the circuit court filed its written findings of fact (FOFs), conclusions of law (COLs), and order granting the prosecution's motion for extended term of imprisonment as a persistent offender, wherein the circuit court entered the following relevant FOFs, COLS, and order:

1. The [c]ourt finds that Defendant Rivera is a "persistent offender" within the meaning of Section 706–662(1) of the [HRS] because of the following facts:

a. Defendant Rivera was born on March 8, 1952 and was eighteen (18) years of age or older at the time of the commission of the offenses listed below.

b. On January 20, 1977, in Cr. No. 49175, Defendant Rivera was convicted of the offense of Rape in the Second Degree, an offense which constitutes a class B felony as defined by Act 9, S.L.H. 1972. The offense was committed on March 5, 1976. At all relevant times during these proceedings, Defendant Rivera was represented by counsel. . . .

c. On June 27, 1996, in Cr. No. 95–2564, Defendant Rivera was convicted of the offense of Promoting a Dangerous Drug in the Second Degree, an offense which constitutes a class B felony as defined by the Hawaii Penal Code. The offense was committed on February 1, 1995. . . .

d. On October 15, 1996, in Cr. No. 96–1456, Defendant Rivera was convicted of the offense of Promoting a Dangerous Drug in the Second Degree, an offense which constitutes a class B felony as defined by the Hawaii Penal Code. The offense was committed on October 12, 1995. . . .

2. The [c]ourt further finds that Defendant Rivera is a "persistent offender" whose commitment for an extended term is necessary for the protection of the public because of the following facts:

a. Defendant Rivera's criminal history included eighty-two (82) arrests resulting in three (3) prior felony convictions in addition to convictions for twenty-seven (27) misdemeanor, petty misdemeanor and violations.

b. Defendant Rivera has an extensive criminal history, the characteristics of which have involved a felony conviction for the violent act of Rape in the Second Degree and two (2) separate convictions for Promoting a Dangerous Drug in the Second Degree.

c. Defendant Rivera's criminality has continued despite being sentenced to periods of both probation and incarceration in his prior convictions. In the instant case, a jury found Defendant Rivera guilty of possession of methamphetamine, drug paraphernalia and marijuana. It is evident that Defendant Rivera's prior involvement with the criminal justice system has not deterred him from further criminal activity.

d. Defendant Rivera has failed to benefit from the criminal justice system.

e. Defendant Rivera has demonstrated a total disregard for the rights of others and has a poor attitude towards the law.

f. Defendant Rivera has demonstrated a pattern of criminality which indi-

cates that he is likely to be a recidivist in that he cannot conform his behavior to the requirement of the law.

g. Due to the quantity and seriousness of Defendant Rivera's past convictions and the seriousness of the instant offenses, Defendant Rivera poses a serious threat to the community[,] and his long term incarceration is necessary for the protection of the public.

3. *Pursuant to the consideration of the other sentencing factors under HRS Section 706-606 [ (1993) ],[* 8 *] the [c]ourt further finds that extended term sentences need to be imposed* to reflect the seriousness of the offenses, to promote respect for law, to provide just punishment for the offenses, to afford adequate deterrence to criminal conduct, *to protect the public from further crimes of Defendant Rivera,* to provide Defendant Rivera with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

4. Based on the above, this [c]ourt further finds that Defendant Rivera is a "persistent offender", eligible for extended terms of imprisonment of ten (10) years for each of the class C felony offenses in Counts I and II.

### ORDER

ACCORDINGLY, IT IS HEREBY ORDERED that the [prosecution]'s Motion For Extended Term Of Imprisonment Of A Persistent Offender be[,] and the same is, hereby granted. IT IS FURTHER ORDERED that Defendant Rivera be sentenced to the extended terms of imprisonment of ten (10) years for each of the class C felony offenses in Counts I and II.

IT IS FURTHER ORDERED that said terms are to run concurrently.

(Emphases added).

Also on November 3, 2003, the circuit court filed its written FOFs, COLs, and order granting the prosecution's motion for extended terms of imprisonment as a multiple offender, wherein the circuit court entered the following relevant FOFs, COLS, and order:

1. The [c]ourt finds that Defendant Rivera is a "multiple offender" within the meaning of HRS Section 706-662(4)(a) because he has been sentenced for two (2) felonies, to wit:

Cr. No. 02-1-2128

*Count I:*

Promoting a Dangerous Drug in the Third Degree (HRS Section 712-1243; a class C felony)

*Count II:*

Unlawful Use of Drug Paraphernalia

(HRS Section 329-43.5(a); a class C felony)

2. Upon consideration of the nature and circumstances of the offenses and the history and characteristics of Defendant Rivera, as mandated by HRS Section 706-606(1), [*see supra* note 8,] this [c]ourt further finds that Defendant Rivera is a "multiple offender" whose commitment for extended terms is necessary for the protection of the public because of the following facts:

a. Defendant Rivera's criminal history included eighty-two (82) arrests resulting in three (3) prior felony convictions in addition to convictions for twenty-seven (27) misdemeanor, petty misdemeanor and violations.

8. HRS § 706-606 provides:
 **Factors to be considered in imposing a sentence.** *The court, in determining the particular sentence to be imposed, shall consider:*
 (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
 (2) The need for the sentence imposed:
 (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
 (b) To afford adequate deterrence to criminal conduct;

 (c) *To protect the public from further crimes of the defendant;* and
 (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
 (3) The kinds of sentences available; and
 (4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.
 (Emphases added).

b. Defendant Rivera has an extensive criminal history, the characteristics of which have involved a felony conviction for the violent act of Rape in the Second Degree and two (2) separate convictions for Promoting a Dangerous Drug in the Second Degree.

c. Defendant Rivera's criminality has continued despite being sentenced to periods of both probation and incarceration in his prior convictions. In the instant case, a jury found Defendant Rivera guilty of possession of methamphetamine, drug paraphernalia and marijuana. It is evident that Defendant Rivera's prior involvement with the criminal justice system has not deterred him from further criminal activity.

d. Defendant Rivera has failed to benefit from the criminal justice system.

e. Defendant Rivera has demonstrated a total disregard for the rights of others and has a poor attitude towards the law.

f. Defendant Rivera has demonstrated a pattern of criminality which indicates that he is likely to be a recidivist in that he cannot conform his behavior to the requirement of the law.

g. Due to the quantity and seriousness of Defendant Rivera's past convictions and the seriousness of the instant offenses, Defendant Rivera poses a serious threat to the community[,] and his long term incarceration is necessary for the protection of the public.

3. *Pursuant to the consideration of the other sentencing factors under HRS Section 706–606[, see supra note 8], the [c]ourt further finds that extended term sentences need to be imposed* to reflect the seriousness of the offenses, to promote respect for law, to provide just punishment for the offenses, to afford adequate deterrence to criminal conduct, *to protect the public from further crimes of Defendant Rivera,* to provide Defendant Rivera with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

4. Based on the above, this [c]ourt further finds that Defendant Rivera is a "multiple offender," eligible for extended terms of imprisonment of ten (10) years for each of the class C felony offenses in Counts I and II.

### ORDER

ACCORDINGLY, IT IS HEREBY ORDERED that the [prosecution]'s Motion For Extended Terms Of Imprisonment Of A Multiple Offender be[,] and the same is, hereby granted.

IT IS FURTHER ORDERED that Defendant Rivera be sentenced to the extended terms of imprisonment of ten (10) years for each of the class C felony offenses in Counts I and II.

IT IS FURTHER ORDERED that said terms are to run concurrently.

(Emphases added).

On November 4, 2003, Rivera timely filed a notice of appeal.

## II. STANDARDS OF REVIEW

### A. *Sentencing*

[A] sentencing judge generally has broad discretion in imposing a sentence. *State v. Gaylord,* 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995); *State v. Valera,* 74 Haw. 424, 435, 848 P.2d 376, 381 ... (1993). The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184; *State v. Kumukau,* 71 Haw. 218, 227–28, 787 P.2d 682, 687–88 (1990); *State v. Murray* [,] 63 Haw. 12, 25, 621 P.2d 334, 342–43 (1980); *State v. Fry,* 61 Haw. 226, 231, 602 P.2d 13, 16 (1979).

*Keawe v. State,* 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995). "[F]actors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." *Fry,* 61 Haw. at 231, 602 P.2d at 17. And, " '[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the

bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Keawe,* 79 Hawai'i at 284, 901 P.2d at 484 (quoting *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184 (quoting *Kumukau,* 71 Haw. at 227–28, 787 P.2d at 688)).

*State v. Kaua,* 102 Hawai'i 1, 7, 72 P.3d 473, 479 (2003) (quoting *State v. Rauch,* 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000)) (brackets and ellipsis points in original).

### B. Questions Of Constitutional Law

■■■ "We answer questions of constitutional law 'by exercising our own independent judgment based on the facts of the case,' " and, thus, questions of constitutional law are reviewed on appeal "under the 'right/wrong' standard." *State v. Jenkins,* 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations omitted).

*Kaua,* 102 Hawai'i at 7, 72 P.3d at 479 (quoting *State v. Aplaca,* 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001)).

### C. Statutory Interpretation

■■■■ "[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (*quoting State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704 (1994). . . .

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (*quoting State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2)(1993). "Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Kaua,* 102 Hawai'i at 7–8, 72 P.3d at 479–480 (quoting *Rauch,* 94 Hawai'i at 322–23, 13 P.3d at 331–32(quoting *State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit,* 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker,* 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich,* 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998)))))))).

### D. Plain Error

■■■ " 'We may recognize plain error when the error committed affects substantial rights of the defendant.' " *State v. Cordeiro,* 99 Hawai'i 390, 405, 56 P.3d 692, 707, *reconsideration denied,* 100 Hawai'i 14, 58 P.3d 72 (2002) (quoting *State v. Jenkins,* 93 Hawai'i 87, 101, 997 P.2d 13, 27 (2000) (quoting *State v. Cullen,* 86 Hawai'i

1, 8, 946 P.2d 955, 962 (1997))). *See also* [Hawai'i Rules of Penal Procedure] HRPP Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

*Hauge*, 103 Hawai'i at 48, 79 P.3d at 141 (quoting *State v. Matias*, 102 Hawai'i 300, 304, 75 P.3d 1191, 1195 (2003)).

## III. *DISCUSSION*

### A. *Hawaii's Extended Term Sentencing Scheme Is Not Incompatible With The United States Supreme Court's Decision In Blakely v. Washington.*

■ Rivera argues that the United States Supreme Court's recent decision in *Blakely v. Washington* renders Hawaii's extended term sentencing scheme unconstitutional insofar as it denied him his right to a jury trial by imposing an extended term sentence based upon facts found by the sentencing court but not by the jury. Rivera submits that the circuit court could not have extended his terms of imprisonment based solely on the facts that the jury found beyond a reasonable doubt at his trial, because it was the circuit court that made the posttrial finding that extended term sentences were "necessary for the protection of the public." Rivera propounds that, inasmuch as "this 'public protection' finding was 'essential to the punishment' [he] received, it had to be made by a jury under *Apprendi*" and *Blakely*. We disagree.

*Blakely* focused on the perceived defects of Washington state's determinate sentencing scheme, applying the rule the Court had previously crafted in *Apprendi*, *i.e.*, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Thus, the *Blakely* majority held that a Washington court's sentencing of a defendant to more than three years above the 53–month statutory maximum of the prescribed "standard range" for his offense, on the basis of the sentencing judge's finding that the defendant had acted with deliberate cruelty, violated his sixth amendment right to trial by jury. In our view, the *Blakely* analysis vis-a-vis *Apprendi* is confined to the meaning of the construct "statutory maximum" within the context of *determinate* or "guideline" sentencing schemes. Inasmuch as Hawaii's extended term sentencing structure is *indeterminate*, we believe that *Blakely* does not affect the "intrinsic-extrinsic" analysis that this court articulated in *Kaua*.

The *Blakely* majority explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." —— U.S. at ——, 124 S.Ct. at 2537 (emphasis in original). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional facts." *Id.* (emphasis in original). Accordingly, the essential mandate of *Apprendi*—*i.e.*, that any fact other than a prior conviction must be submitted to a jury and proved beyond a reasonable doubt—is unaffected by the Court's decision in *Blakely*. *Blakely* can reasonably be construed, then, as a gloss on *Apprendi*, clarifying (1) that the upward limit of any given presumptive sentencing range prescribed in a statutory scheme utilizing a "determinate" sentencing "guideline" system constitutes the "statutory maximum" and (2) that a defendant upon whom a sentence exceeding this "statutory maximum" is imposed is entitled to all of the procedural protections that *Apprendi* articulates.

In connection with the foregoing, the *Blakely* majority reasoned as follows:

> Justice O'CONNOR argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. *Post*, at 2543–2548. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. *Inde-*

*terminate sentencing does not do so.* It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

—— U.S. at ——, 124 S.Ct. at 2540 (emphasis added). Thus, the *Blakely* majority's declaration that indeterminate sentencing does not abrogate the jury's traditional factfinding function effectively excises indeterminate sentencing schemes such as Hawaii's from the decision's sixth amendment analysis. *See People v. Claypool,* 470 Mich. 715, 684 N.W.2d 278, 286 (2004) ("[T]he majority in [*Blakely* ] made clear that the decision did not affect indeterminate sentencing systems."). As such, this court's *Kaua* analysis retains its vitality with respect to Rivera's present challenge of HRS §§ 706–662(1) and (4)(a) and disposes of his claim that the circuit court erred in imposing extended term sentences.

*Kaua* reaffirmed the "intrinsic-extrinsic" analysis first articulated by this court in *State v. Schroeder,* 76 Hawai'i 517, 880 P.2d 192 (1994), and reaffirmed in *State v. Tafoya,* 91 Hawai'i 261, 982 P.2d 890 (1999), and rejected the defendant's argument that *Apprendi* mandated that a "multiple offender" determination, for purposes of HRS § 706–662(4)(a), must be made by the trier of fact, holding (1) that HRS § 706–662 passed constitutional muster under the Hawai'i and United States Constitutions and (2) that "[t]he facts foundational to ... extended terms of imprisonment ..., pursuant to HRS § 706–662(4)(a), fell outside the *Apprendi* rule, and, thus, the ultimate finding that [a defendant] was a 'multiple offender' whose extensive criminal actions warranted extended prison terms was properly within the province of the sentencing court." *Kaua,* 102 Hawai'i

at 13, 72 P.3d at 485. In so holding, this court noted

> the fundamental distinction between the nature of the predicate facts described in HRS §§ 706–662(1), (3), and (4), ... on the one hand, and those described in HRS §§ 706–662(5) and (6), ... on the other. Specifically, the facts at issue in rendering an extended term sentencing determination under HRS §§ 706–662(1), (3), and (4) implicate considerations completely "extrinsic" to the elements of the offense with which the defendant was charged and of which he was convicted; accordingly, they should be found by the sentencing judge in accordance with [*State v.] Huelsman* [, 60 Haw. 71, 588 P.2d 394 (1979),] and its progeny. The facts at issue for purposes of HRS §§ 706–662(5) and (6), however, are, by their very nature, "intrinsic" to the offense with which the defendant was charged and of which he has been convicted; accordingly, they must be found beyond a reasonable doubt by the trier of fact in order to afford the defendant his constitutional rights to procedural due process and a trial by jury. *Tafoya,* 91 Hawai'i at 271–72, 982 P.2d at 900–01; *Schroeder,* 76 Hawai'i at 528, 880 P.2d at 203.

*Id.* at 12–13, 72 P.3d at 484–85 (emphases added).

*Hauge,* 103 Hawai'i at 59–60, 79 P.3d at 152–53 (emphases deleted) (brackets in original).

Based on *Kaua,* we held in *Hauge* that HRS § 706–662(1), *see supra* note 4, is not unconstitutional. HRS § 706–662(1) allows for extended term sentencing if the "defendant is a persistent offender whose imprisonment for an extended term is necessary for protection of the public" and the defendant has "previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older." In *Hauge,* the defendant-appellant argued, as Rivera does now, that "under *Apprendi,* the finding that an extended term of imprisonment is 'necessary for protection of the public' is 'separate and apart from [the court's] findings as to the predicate facts' and, therefore, 'should have been submitted

to a jury and proven beyond a reasonable doubt.'" *Hauge,* 103 Hawai'i at 59–60, 79 P.3d at 152–53. Nevertheless, we concluded that, in light of *Kaua,* Hauge's argument that HRS § 706–662(1) is unconstitutional was without merit.

The bottom line is that *Blakely's* gloss on *Apprendi,* which addresses only statutory "determinate" sentencing "guideline" schemes, does not undermine the ongoing viability of this court's decision in *Kaua.*

### 1. *Hawaii's indeterminate extended term sentencing scheme*

 "Under our system of government, the power to determine appropriate punishment for criminal acts lies in the legislative branch." *State v. Bernades,* 71 Haw. 485, 490, 795 P.2d 842, 845 (1990) (quoting *State v. Freitas,* 61 Haw. 262, 274, 602 P.2d 914, 923 (1979)). Hawai'i utilizes a mandatory indeterminate sentencing scheme. *See Bernades,* 71 Haw. at 488, 795 P.2d at 844. An indeterminate sentence is "[a] sentence to imprisonment for the maximum period defined by law, subject to termination by the parol board or other [authorized] agency at any time after service of the minimum period" ordinarily set by the paroling authority. Black's Law Dictionary 911 (4th ed. 1968). In this jurisdiction, a convicted defendant's individual characteristics and culpability are considered by the Hawai'i Paroling Authority, which sets the minimum term of imprisonment, pursuant to HRS § 706–669 (1993). *Bernades,* 71 Haw. at 488, 795 P.2d at 844.

In *State v. Kido,* 3 Haw.App. 516, 654 P.2d 1351 (1982), the Intermediate Court of Appeals (ICA) explained the history of the legislature's allocation of the power to sentence:

> Prior to 1965, the paroling authority recommended and the judiciary set the minimum sentence which the convicted defendant was required to serve before becoming eligible for parole and discharge. [Revised Laws of Hawai'i (RLH)] § 258–52 (1955). In 1965, RLH § 258–52[ ] was amended by Act 102 to take away from the judiciary and instead give to the paroling authority the sole authority to deter-

mine minimum terms of imprisonment. Section 258–52, as amended, was recodified in 1968 as HRS § 711–76, pursuant to Act 16 (1968). In 1972, HRS § 711–76 was repealed by Act 9 which enacted the Hawaii Penal Code.

As part of the Hawaii Penal Code, HRS § 706–669 [ (1993) ] now provides, *inter alia:*

> § 706–669 Procedure for determining minimum term of imprisonment. (1) When a person has been sentenced to an indeterminate or an extended term of imprisonment, the Hawaii paroling authority shall, as soon as practicable but no later than six months after commitment to the custody of the director of the department of social services and housing hold a hearing, and on the basis of the hearing make an order fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole.

As the commentary on HRS § 706–669 states, "This section continues the policy of the previous law of vesting in the Board of Paroles & Pardons the exclusive authority to determine the minimum time which must be served before the prisoner will be eligible for parole."

The legislature has also restricted the judiciary's authority with respect to the kinds of sentences which it may impose.

Section 706–660, HRS (1976) provided:

> § 706–660 Sentence of imprisonment for felony; ordinary terms. A person who has been convicted of a felony may be sentenced to an indeterminate term of imprisonment except as provided for in section 706–660.1 relating to the use of firearms in certain felony offenses. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:
>
> (1) For a class A felony—20 years;
>
> (2) For a class B felony—10 years; and
>
> (3) For a class C felony—5 years.[9]

---

9. HRS § 706–660 (1993) now provides:

**Sentence of imprisonment for class B and C**

The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706–669.

Apparently referring to the amendments made by Act 102 (1965), the commentary to HRS § 706–660 (1976) states, *inter alia:*

> In 1965, the Legislature enacted a law designed to end judicially imposed inconsistent sentences of imprisonment. This policy—known as true indeterminate sentencing—is continued. The court's discretion is limited to choosing between imprisonment and other modes of sentencing. Once the court has decided to sentence a felon to imprisonment, the actual time of release is determined by parole authorities. Having decided on imprisonment, the court must then impose the maximum term authorized.... [Footnotes omitted.]

*Id.* at 524–25, 654 P.2d at 1357–59. Moreover, the commentary to HRS § 706–660 contains a footnote, which states that "[i]t must, however, be remembered that the Code grants the court the power to impose an extended term of imprisonment" pursuant to HRS § 706–661 (1993 & Supp.2003).[10]

In contrast to Hawaii's *indeterminate* sentencing scheme, at issue in *Blakely* was Washington's *determinate* sentencing structure and, particularly, the sentencing court's imposition of a sentence thirty-seven months in excess of the fifty-three-month upward limit of the statutorily enumerated "standard range." *Blakely,* —— U.S. at ——, 124 S.Ct. at 2537. Washington codified a ten-year (or 120–month) maximum sentence for class B felonies in Revised Code of Washington (RCW) § 9A.20.021(1)(b). *Id.* Nevertheless, the "presumptive guideline range" for a class B felony was set between forty-nine and fifty-three months. *Id.* at 2535. As noted *supra* in Section III.A, *Blakely* construed the upward limit of the presumptive guideline range, and not the ten-year maximum sentence for a class B felony, as the "statutory maximum." The *Blakely* majority explained, consistent with *Apprendi,* that any fact permitting sentencing in excess of the upward limit of the presumptive guideline range must be found by the trier of fact at trial beyond a reasonable doubt. *Id.* at 2537. At issue in *Blakely* was the fact that the sentencing court's finding of an aggravating fact—*i.e.,* that the defendant had acted with deliberate cruelty—subjected the defendant to an enhanced sentence under Washington's determinate sentencing guideline scheme, notwithstanding that the defendant had not admitted the fact in a guilty plea, nor had a jury found it at trial beyond a reasonable doubt. Therein lies the distinction between Hawaii's enhanced sentencing structure, set forth in HRS § 706–662, and Washington's determinate sentencing guideline scheme: (1) In Hawai'i, the sentencing scheme is indeterminate, and there is no presumptive guideline range; and (2) the sentencing court could *not* have subjected the defendant to an extended term of imprisonment based on the same facts in *Blakely* without submitting

---

felonies; ordinary terms. A person who has been convicted of a class B or class C felony may be sentenced to an indeterminate term of imprisonment except as provided for in section 706–660.1 relating to the use of firearms in certain felony offenses and section 706–606.5 relating to repeat offenders. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:

(1) For a class B felony—10 years; and

(2) For a class C felony—5 years.

*The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706–669.*

(Emphasis added).

10. HRS § 706–661 provides:

**Sentence of imprisonment for felony; extended terms.** In the cases designated in section 706–662, a person who has been convicted of a felony may be sentenced to an extended *indeterminate* term of imprisonment. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:

(1) For murder in the second degree—life without the possibility of parole;

(2) For a class A felony—*indeterminate* life term of imprisonment;

(3) For a class B felony—*indeterminate* twenty-year term of imprisonment; and

(4) For a class C felony—*indeterminate* ten-year term of imprisonment.

The minimum length of imprisonment for [paragraphs] (2), (3), and (4) shall be determined by the Hawaii paroling authority in accordance with section 706–669.

(Emphases added.)

those facts to the trier of fact, because the aggravating factor of "deliberate cruelty" entailed an "intrinsic" fact so "inextricably enmeshed in the defendant's actions in committing the offense charged ... that the Hawai'i Constitution requires that these findings be made by the trier of fact[.]" *Kaua*, 102 Hawai'i at 11, 72 P.3d at 483 (quoting *Tafoya*, 91 Hawai'i at 271–72, 982 P.2d at 900–01).

2. *The circuit court did not err by sentencing Rivera to extended terms of imprisonment as a persistent and multiple offender.*

 "It is settled that an extended term sentencing hearing is 'a separate criminal proceeding apart from the trial of the underlying substantive offense,' wherein 'all relevant issues should be established by the state beyond a reasonable doubt.' " *Kaua*, 102 Hawai'i at 9, 72 P.3d at 481 (quoting *State v. Kamae*, 56 Haw. 628, 635, 548 P.2d 632, 637 (1976)).

A convicted defendant may be subject to an extended term of imprisonment if "[t]he defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public[,]" and "[t]he defendant is being sentenced for two or more felonies...." HRS § 706–662(4)(a). A convicted defendant may also be subject to an extended term of imprisonment if "[t]he defendant is a persistent offender whose imprisonment for an extended term is necessary for protection of the public[,]" and "the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older." HRS § 706–662(1). Thus, what subjected Rivera to an extended term of imprisonment as a multiple offender under HRS § 706–662(4)(a) was the fact of his current convictions of and sentencing for two or more felonies, the elements of each of which the jury had found that the prosecution had proved beyond a reasonable doubt. Similarly, Rivera was subject to an extended term of imprisonment as a persistent offender under HRS § 706–662(1) based upon two prior felony convictions committed at different times at the age of eighteen years or older, facts

extrinsic to the offenses of which he has presently been convicted and, therefore, outside the purview of the jury's factfinding function.

In *Huelsman*, this court set out a two-step process in which a sentencing court must engage in order to impose an extended term sentence. 60 Haw. at 76, 588 P.2d at 398. The first step requires a finding beyond a reasonable doubt that the defendant is within the class of offenders to which the particular subsection of HRS § 706–662 applies. *Id.* In the event that the sentencing court finds that the defendant is a persistent offender under subsection (1) or a multiple offender under subsection (4), the second step requires the sentencing court to determine whether "the defendant's commitment for an extended term is necessary for protection of the public." *Id.*

In the course of the October 8, 2003 sentencing hearing, the circuit court orally ruled that Rivera was both a persistent and multiple offender whose extended term sentences were necessary for the protection of the public, *see supra* Section I, based in pertinent part on Rivera's extensive criminal history. The circuit court then reaffirmed, in its November 3, 2003 written FOFs, COLs, and orders granting the prosecution's motions for extended term sentencing as a persistent and multiple offender, that Rivera's "long term incarceration [was] necessary for the protection of the public" due to the "quantity and seriousness of ... Rivera's past convictions and the seriousness of the instant offenses." Accordingly, the circuit court adhered to the mandate set forth in *Huelsman* that the sentencing court "shall enter into the record all·findings of fact which are necessary to its decision." 60 Haw. at 92, 588 P.2d at 407. Moreover, the circuit court complied with the *Huelsman* two-step process, finding that (1) Rivera was a persistent *and* multiple offender and (2) that his commitment for an extended term was necessary for the protection of the public. *Id.* at 77, 588 P.2d at 398. We cannot say that the circuit court acted in an "arbitrary or capricious" manner, such that it "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to [Rivera's] substantial detri-

ment[.]" *See Kaua*, 102 Hawai'i at 7, 72 P.3d at 479. Thus, inasmuch as the circuit court's imposition of extended term sentences passed muster under both the United States and Hawai'i Constitutions, the circuit court did not err in granting the prosecution's motions for extended term sentences.

3. *Comparison of the judicial determination "to protect the public" at ordinary sentencing and extended term sentencing*

Justice Acoba, in his dissent, contends that the crucial factors in determining whether *Blakely* applies to HRS § 706–662 in the present matter were (1) the circuit court's determination that sentencing Rivera to extended terms of imprisonment was "necessary for protection of the public" and (2) the fact that such a pronouncement subjected Rivera to "greater punishment than that which could be imposed on the basis of the guilty verdict only." Dissenting opinion at 172, 102 P.3d at 1070.

It could be said that the analogue of *Blakely's* statutory "standard range" prescribed by Hawaii's indeterminate sentencing scheme for a class C felony is the statutory alternative between a sentence of probation and a five-year term of imprisonment, pursuant to HRS §§ 706–605 (1993 & Supp.2003)[11] and 706–660, *see supra* note 9. As noted *supra* in

Section III.A.1, the commentary to HRS § 706–660 explains that "[t]he court's discretion is limited to choosing between imprisonment and other modes of sentencing" and, "[h]aving decided on imprisonment, the court must then impose the maximum term authorized." *See Kido*, 3 Haw.App. at 525, 654 P.2d at 1358.

Thus, had the circuit court imposed upon Rivera a sentence falling within the "standard range" for a class C felony in Counts I and II, it would have chosen either probation or a five-year term of imprisonment, pursuant to HRS § 706–660. For mandatory guidance in determining whether to impose a sentence of probation or imprisonment, the circuit court would then have looked to the "traditional" factors considered in imposing a sentence, pursuant to HRS § 706–606, *see supra* note 8.

As a general matter, when exercising its broad discretion to impose any particular sentence so as to fit the punishment to the offense as well as to the needs of the individual defendant and the community, the sentencing court bec[omes] obligated to consider the HRS § 706–606 "factors" as part of its decision making process.

. . . .

... HRS § 706–606(2) [ (1993) ] mandates consideration of the four classic

---

11. HRS § 706–605 provides in relevant part:

 **Authorized disposition of convicted defendants.** (1) Except as provided in parts II and IV of this chapter or in section 706–647 and subsections (2) and (6) of this section and subject to the applicable provisions of this Code, *the court may sentence a convicted defendant to one or more of the following dispositions:*
 (a) *To be placed on probation* as authorized by part II of this chapter;
 (b) To pay a fine as authorized by part III and section 706–624 of this chapter;
 (c) *To be imprisoned* for a term as authorized by part IV of this chapter;
 (d) To make restitution in an amount the defendant can afford to pay; provided that the court may order any restitution to be paid to victims pursuant to section 706–646 or to the crime victim compensation special fund in the event that the victim has been given an award for compensation under chapter 351 and, if the court orders, in addition to restitution,

payment of fine in accordance with paragraph (b), the payment of restitution and a compensation fee shall have priority over the payment of the fine; payment of restitution shall have priority over payment of a compensation fee; or
 (e) To perform services for the community under the supervision of a governmental agency or benevolent or charitable organization or other community service group or appropriate supervisor; provided that the convicted person who performs such services shall not be deemed to be an employee of the governmental agency or assigned work site for any purpose. All persons sentenced to perform community service shall be screened and assessed for appropriate placement by a governmental agency coordinating public service work placement as a condition of sentence.
 (2) The court shall not sentence a defendant to probation and imprisonment except as authorized by part II of this chapter.
(Emphases added).

penal objectives—retribution/just punishment, deterrence, incapacitation, and rehabilitation[.]

*Gaylord,* 78 Hawai'i at 149–50, 890 P.2d at 1189–90 (footnotes and citations omitted). Specifically, HRS § 706–606(2)(c) provides that the sentencing court shall consider the need for the sentence imposed to "protect the public from further crimes of the defendant[.]"

> HRS § 706–606(2)(c) reflects the penal objective of "incapacitation."
>
> > Incapacitation is the idea of simple restraint: rendering the convicted offender incapable, for a period of time, of offending again. Whereas rehabilitation involves changing the person's habits or attitudes so he or she becomes less criminally inclined, incapacitation presupposes no such change. Instead, obstacles are interposed to impede the person's carrying out whatever criminal inclinations he or she may have. Usually, the obstacle is the walls of a prison, but other incapacitative techniques are possible—such as exile or house arrest.
>
> [A. von Hirsch and A. Ashworth,] *Principled Sentencing* at 101 [ (1992) ]. For the latest and probably most definitive empirical study of the relationship between incapacitation and crime reduction, *see* F. Zimring and G. Hawkins, *Incapacitation* (1995).

*Gaylord,* 78 Hawai'i at 148 n. 35, 890 P.2d at 1188 n. 35. Therefore, as this court explained in *Gaylord,* sentencing courts are *required* to consider the four classic penal objectives embedded in HRS § 706–606(2) when imposing *any* sentence, whether for ordinary or extended terms. Most relevant to our present analysis, sentencing courts *must* evaluate the *"need for the sentence imposed ... [t]o protect the public from further crimes of the defendant[.]"* HRS § 706–606(2)(c) (emphasis added). Consequently, in the case of sentencing a defendant to our statutory scheme's "standard range" for a class C felony, the jury's verdict alone authorizes a sentence of either probation or a five-year indeterminate maximum term of imprisonment under HRS § 706–660, and that authorization by the jury's verdict includes the re-

quirement that the sentencing court consider all the factors set forth in HRS § 706–606 when determining the particular sentence to be imposed.

In the present matter, the circuit court was *required* first to consider the factors set forth in HRS § 706–606 in imposing a sentence; in doing so, the circuit court obviously determined that the indeterminate maximum term of imprisonment for each of Rivera's class C felonies, rather than probation, was the appropriate sentence. *See supra* Section I. Furthermore, the circuit court expressly noted in its written FOFs, COLs, and orders granting the prosecution's motions for extended terms of imprisonment as a persistent and multiple offender that it had considered the sentencing factors enumerated in HRS § 706–606 and had determined that extended term sentences were appropriate in order "to protect the public from further crimes" committed by Rivera. *Id.* Thus, the circuit court determined under HRS § 706–606 that the classic penal objective of "incapacitation" took primacy in the sentencing of Rivera in order to accomplish the goal of rendering him incapable of offending again for the indeterminate maximum period of time. As the circuit court demonstrated in its findings, such an analysis under HRS § 706–606 was the basis for its determination that prison for an indeterminate maximum term, rather than probation, was the appropriate sentence for Rivera.

Admittedly, a sentencing court's imposition of an extended term sentence requires the determination that it is "necessary for protection of the public." HRS § 706–662. Nevertheless, such a determination is effectively the same one that the sentencing court has made upon concluding that a defendant should be sentenced to an indeterminate maximum term of imprisonment rather than probation under "ordinary" sentencing principles. The factor that justifies the enhancement of the sentence to extended prison terms, therefore, is the fact of prior or multiple felony convictions. *See Almendarez–Torres v. United States,* 523 U.S. 224, 243, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (noting that "recidivism ... is a traditional, if not the most traditional, basis for a sentencing

court's increasing an offender's sentence"). Thus, the sentencing judge acquires the authority to impose an extended term sentence under HRS § 706–662(1) *only* upon finding the *Apprendi*-approved "additional fact" of a prior conviction. Moreover, HRS §§ 706–662(1) and 706–662(4) expressly mandate that the sentencing court "shall not make such a finding" that an extended term sentence is "necessary for protection of the public" *unless* the defendant has prior or multiple felony convictions. Hence, the "necessary for protection of the public" determination alone is insufficient to subject a defendant to extended terms of imprisonment. In contrast, the sentencing court's finding in *Blakely* that the defendant acted with deliberate cruelty, was the sole aggravating factor that extended the defendant's sentence to ninety months from the fifty-three-month statutory maximum of the standard range.

To recapitulate, inasmuch as both HRS §§ 706–606 and 706–662 require the determination of whether the sentence imposed is needed to protect the public, the *sole* determining factor remaining that increases the penalty under Hawaii's extended term sentencing in HRS § 706–662(1) is the fact of a prior conviction, a fact that the Supreme Court expressly authorized the sentencing court to find in *Apprendi* and again in *Blakely*. Similarly, the *sole* factor, beyond those already enumerated in HRS § 706–606 and already considered by the sentencing court, which extends an indeterminate prison term pursuant to HRS § 706–662(4)(a), is the fact that a defendant is a multiple offender. The multiple offender determination, pursuant to HRS § 706–662(4)(a), mirrors the prior conviction exception in *Apprendi* because the defendant has either already pleaded guilty, and thereby admitted guilt, or the trier of fact has found beyond ·a reasonable doubt that the defendant has committed two or more felonies for which he is currently being sentenced. *See Apprendi*, 530 U.S. at 488, 120 S.Ct. 2348 (reasoning that both the "certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that [the defendant] did not challenge ... that 'fact[,]' ... mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range").

To underscore our point, we note that, within the range of discretion that the Hawai'i Penal Code affords courts in imposing sentences, HRS § 706–668.5 (1993) [12] authorizes sentencing courts to impose sentences consecutively under certain circumstances.

HRS § 706–668.5 (1993) permits consecutive sentencing if multiple terms of imprisonment are imposed on a criminal defendant at the same time. The legislative purpose of the statute is to give the sentencing court discretion to sentence a defendant to a term of imprisonment to run either concurrently or consecutively. Discretionary use of consecutive sentences is properly imposed in order to deter future criminal behavior of the defendant, to insure public safety, and to assure just punishment for the crimes committed. Absent clear evidence to the contrary, it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706–606 (1993).

*State v. Tauiliili*, 96 Hawai'i 195, 199–200, 29 P.3d 914, 918–19 (2001) (footnotes and citations omitted).

In the present matter, the circuit court had the discretion under HRS § 706–668.5 to sentence Rivera to serve two consecutive five-year indeterminate maximum terms of imprisonment for his convictions of class C felonies in Counts I and II because "multiple

**12.** HRS § 706–668.5 provides:
**Multiple sentence of imprisonment.** (1) If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms run concurrently.
(2) The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706–606.

terms of imprisonment [were] imposed on [him] at the same time[.]" Again, the circuit court would have been required to consider the factors set forth in HRS § 706–606—including the need to "protect the public" contained in HRS § 706–606(2)(c)—when determining whether to impose consecutive or concurrent terms of imprisonment.

[B]y the plain language of HRS § 706–668.5(2)—although subject, pursuant to HRS § 706–668.5(1), to presumptively concurrent sentencing in connection with multiple prison terms "imposed at the same time"—, the sentencing court [is] obligated to "consider the factors set forth in [HRS § ] 706–606" when determining whether multiple indeterminate prison terms were to run concurrently or consecutively.

. . . .

. . . [T]he fact that HRS § 706–606 is incorporated by reference into HRS § 706–668.5 has profound significance. Bearing in mind that all indeterminate (including consecutive) prison terms are inherently incapacitative, the legislative sentencing philosophy permeating HRS ch. 706 in general and HRS § 706–606 in particular dictates that discretionary consecutive prison sentences, pursuant to HRS § 706–668.5, may properly be imposed only if the penal objectives sought to be achieved include retribution (i.e., "just deserts") and deterrence.

*Gaylord,* 78 Hawai'i at 150, 890 P.2d at 1190 (footnotes omitted). Had the circuit court sentenced Rivera to consecutive terms of imprisonment in Counts I and II, the effect would have been a ten-year indeterminate maximum term of imprisonment, a term *equal* to the two *concurrent* ten-year extended terms of imprisonment that the circuit court actually imposed in this case. *See supra* Section I. It defies logic that the circuit court could, consistent with *Blakely,* legitimately impose the same ten-year sentence, comprised of two consecutive five-year indeterminate maximum terms, under ordinary sentencing principles, but run afoul of *Blakely* by imposing concurrent ten-year extended terms of imprisonment based on the finding of prior or multiple concurrent convictions.

## B. *The Circuit Court Properly Sentenced Rivera As A Repeat Offender.*

Rivera argues that the circuit court erred in sentencing him as a repeat offender, pursuant to HRS § 706–606.5, *see supra* note 6, for his conviction in Count II, unlawful use of drug paraphernalia, in violation of HRS § 329–43.5(a), inasmuch as unlawful use of drug paraphernalia is not a class C felony enumerated under HRS § 706–606.5 and therefore cannot trigger the operation of the statute. On that basis, Rivera contends that his sentence must be vacated and remanded for further proceedings. We disagree.

The prosecution moved in the present matter for Rivera to be sentenced as a repeat offender, under HRS § 706–606.5(1)(b)(iv), to a mandatory minimum term of imprisonment of three years and four months based upon his conviction of the offense charged in *Count I,* promoting a dangerous drug in the third degree, "an enumerated class C felony under HRS § 706–606.5(1)[.]" It was Rivera's conviction of promoting a dangerous drug in the third degree that triggered his eligibility for sentencing as a repeat offender under HRS § 706–606.5(1).

HRS § 706–606.5 provides in relevant part that "any person convicted of . . . any of the following class C felonies," including HRS § "712–1243[,] relating to promoting a dangerous drug in the third degree[,] . . . *shall* be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period . . . ." (Emphasis added.) In its order granting the prosecution's motion for repeat offender sentencing, the circuit court found that Rivera was a repeat offender based upon his prior convictions in Criminal Nos. 95–2564 and 96–1456, both involving the offense of promoting a dangerous drug in the second degree, in violation of HRS § 712–1242, a class B felony. Thus, Rivera's mandatory minimum sentence under HRS § 706–660.5(1)(b)(iv) for two prior felony convictions, "[w]here the instant conviction is for a class C felony offense enumerated above[, is] three years, four months." The circuit court therefore ordered that Rivera be sentenced to "a mandatory minimum term of imprisonment of three (3) years and

four (4) months without the possibility of parole."

Rivera presumably grounds his assertion that the circuit court sentenced him as a repeat offender based upon his conviction of the offense charged in *Count II*, unlawful use of drug paraphernalia, on the circuit court's *oral* ruling, which granted the prosecution's motion for sentencing of a repeat offender. At the hearing on the prosecution's motion, the circuit court granted the prosecution's motions for extended terms of imprisonment and stated that "in Count 1, I'll sentence you to 10 years; in Count 2, 10 years; in Count 3, 30 days. In Counts 1 *and* 2, mandatory minimum sentence of three years and four months." (Emphasis added). However, in its October 13, 2003 written order granting the prosecution's motion for repeat offender sentencing, the circuit court did not specify the count to which the mandatory minimum term of imprisonment applied. Rivera correctly notes that the offense of unlawful use of drug paraphernalia is not among those class C felonies enumerated in HRS § 706–606.5(1), the conviction of which would possibly subject him to repeat offender sentencing. *See* HRS § 706–606.5(1), *supra* note 6. Nevertheless, assuming *arguendo* that the circuit court orally erred in sentencing Rivera as a repeat offender in connection with Count II, in addition to its oral imposition of a repeat offender sentence in connection with Count I, any error was harmless.

■■■ As a preliminary matter, we note that Rivera is judicially estopped from challenging his sentence as a repeat offender.

■■■ Pursuant to the doctrine of judicial estoppel,

[a] party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action.

*Roxas v. Marcos,* 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998) (citation omitted). At the October 8, 2003 hearing on the prosecution's motions for extended term sentencing,

Rivera expressly conceded that "*the repeat offender statute applies here and that this [c]ourt has an obligation to impose a mandatory minimum*[.]" (Emphasis added). Moreover, Rivera filed a motion for reconsideration of his sentence on January 6, 2004, which stated in relevant part:

2. The defendant appeared before this [c]ourt on October 8, 2003 for sentencing in the above-entitled case. At that time, this [c]ourt imposed the following sentence upon the defendant:

*In Count one*—10 years (as a persistent and multiple offender) concurrent, with *a mandatory minimum sentence of three years and four months.*

In Count two—10 years (as a persistent and multiple offender) concurrent.

In Count three—30 days with credit for time served.

(Emphases added). That being so, Rivera cannot comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) (2004), which requires that he show "where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court[.]" Rivera cannot now "take a position in regard to [his sentence as a repeat offender that] is directly contrary to" what he asserted at sentencing, nor may he raise as error a point on appeal to which he did not object at sentencing. *Roxas,* 89 Hawai'i at 124, 969 P.2d at 1242; HRAP Rule 28(b)(4). For reasons that we discuss *infra*, we decline to recognize plain error, inasmuch as any error committed by the circuit court in orally sentencing Rivera did not affect his "substantial rights." *Hauge,* 103 Hawai'i at 48, 79 P.3d at 141.

■■■ Even if the circuit court's oral grant of the prosecution's motion for repeat offender sentencing misstated that Rivera's mandatory minimum prison term applied to both Counts I and II, "[e]rror is not to be viewed in isolation [or] considered purely in the abstract." *Aplaca,* 96 Hawai'i at 25, 25 P.3d at 800 (citations omitted). "Consistent with the harmless error doctrine, we have frequently stated that error 'must be examined in light of the entire proceedings and given the effect

to which the whole record shows it is entitled.'" *Id.*

The fact that the error, in this case, implicates [Rivera]'s sentence and not his conviction does not render the harmless error doctrine inapplicable. To the contrary, HRS § 641–16 (1993) expressly states that "[n]o order, judgment, or *sentence* shall be reversed or modified unless the court is of the opinion that error was committed which injuriously affected the substantial rights of the appellant." (Emphasis added). In addition, [Hawai'i Rules of Penal Procedure (HRPP)] Rule 52, which provides that "[a]ny error, defect, irregularity[,] or variance which does not affect substantial rights *shall* be disregarded[,]" is applicable to all penal proceedings, including sentencing. (Emphasis added.) *See* HRPP Rule 54(a) (2000) ("These rules shall apply to all penal proceedings in all courts of the State of Hawai'i except as provided in subsection (b) of this rule."). Moreover, the United States Supreme Court has stated that most constitutional errors, including those at sentencing, can be harmless. *See, e.g., Arizona v. Fulminante,* 499 U.S. 279, 306, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

*Id.* (brackets in original).

In its October 13, 2003 *written* order granting the prosecution's motion for repeat offender sentencing, the circuit court imposed only *one* mandatory minimum prison term of three years and four months. In addition, the circuit court imposed extended term sentences of ten years in Counts I and II to run *concurrently.* Accordingly, any error that the circuit court committed by orally stating that the mandatory minimum term of imprisonment applied both to Counts I and II was harmless, because Rivera is, in fact, serving only *one* mandatory minimum term of imprisonment of three years and four months. Moreover, by his own express admission, Rivera clearly understood that the

circuit court (1) had "an obligation to impose a mandatory minimum" term of imprisonment under HRS § 706–606.5 as a result of his conviction of promoting a dangerous drug, as charged in Count I, and (2) had in fact imposed that very mandatory minimum in connection with Count I. As such, we hold (1) that there is no reasonable possibility that the circuit court's oral slip of the tongue contributed to Rivera's sentence and (2) that any resulting error was harmless beyond a reasonable doubt.

## IV. CONCLUSION

Based on the foregoing analysis, we affirm the circuit court's judgment of conviction, extended term sentences, and repeat offender sentence.

Dissenting Opinion by ACOBA, J., with whom DUFFY, J., joins.

In light of *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), I believe our prior decisions in *State v. Kaua,* 102 Hawai'i 1, 72 P.3d 473 (2003), and *State v. Hauge,* 103 Hawai'i 38, 79 P.3d 131 (2003), must be reexamined. In my view, in *Blakely,* the United States Supreme Court further explicated the holding in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and emphatically reaffirmed that the United States Constitution's Sixth Amendment right to a jury trial mandates that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely,* —— U.S. at ——, 124 S.Ct. at 2536 (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348).[1] The Sixth Amendment is applicable to the States through the Fourteenth Amendment and we are bound to apply the construction given it by the United States Supreme Court, to the extent it establishes a minimum standard of protection as against

---

1. Both the prosecution and Defendant cite to *Blakely.* In Defendant's case, the court filed its judgment of conviction and sentence on October 8, 2003. The Supreme Court decided *Blakely* on June 24, 2004. Thus, inasmuch as Defendant's case was pending on direct review when *Blakely* was decided, he is entitled to retroactive applica-

tion of the Supreme Court opinion in *Blakely. Cf. State v. Garcia,* 96 Hawai'i 200, 29 P.3d 919 (2001). In any event, the core premises in *Blakely* are derived from *Apprendi,* which was decided on June 26, 2000, and insofar as such premises are set forth in *Blakely,* references to *Blakely* would encompass *Apprendi.*

government action. *See State v. Adrian*, 51 Haw. 125, 131, 453 P.2d 221, 225 (1969) (holding that the confrontation clause of the Sixth Amendment is applicable to the states and therefore the U.S. Supreme Court's interpretation of the provision is binding upon this court). Applying the plain import of *Blakely* and unless it is otherwise qualified, it would appear that "the State's sentencing procedure [in this case] did not comply with the Sixth Amendment," *Blakely*, —— U.S. at ——, 124 S.Ct. at 2538, and, thus, the sentence imposed on Defendant–Appellant Larry Rivera (Defendant) "is invalid[,]" *id.*, and the case should be remanded for resentencing.[2] I set forth the *Blakely* rule as it applies to this case first and discuss the majority's rationale, second.

## I.

Following a jury trial, Defendant was convicted of Count I, Promoting a Dangerous Drug in the Third Degree, Hawai'i Revised Statutes (HRS) § 712–1243; Count II, Unlawful Use of Drug Paraphernalia, HRS § 329–43.5(a); and Count III, Promoting a Detrimental Drug in the Third Degree, HRS § 712–1249, all class C felonies except for Count III, which is a petty misdemeanor. Thus, under HRS § 706–660 (1993),[3] the "ordinary" and "maximum" sentence as to Count I is five years, as to Count II, five years, and as to Count III, thirty days. Pertinent here, Plaintiff–Appellee State of Hawai'i moved to have Defendant sentenced to an extended term of imprisonment as a multiple offender and to an extended term of imprisonment as a persistent offender for each of the class C felonies in Counts I and

2. The United States District Court for the District of Hawai'i, Judge Susan Oki Mollway, has arrived at a similar application of *Apprendi* in *Kaua v. Frank*, Civ. No. 03–00432, 350 F.Supp.2d 856, 2004 WL 2980265 (D.Haw. Dec. 9, 2004). Subsequent to this court's decision in *Kaua*, on December 9, 2004, the district court granted Kaua's 28 U.S.C. § 2254 petition to vacate extended sentence upon a determination that Kaua's extended sentence was "contrary to, and involved an unreasonable application of *Apprendi*." *Id.* at (29) 856, 2004 WL 2980265.

3. HRS § 706–660 states in pertinent part as follows:

II. The first circuit court (the court), exercising its discretion, granted the motions pursuant to HRS § 706–662 (Supp.2002).[4] HRS § 706–662 provides in relevant part as follows:

**Criteria for extended terms of imprisonment.** A convicted defendant *may* be subject to an extended term of imprisonment under section 706–661, *if the convicted defendant satisfies one or more of the following criteria:*

(1) The defendant is a persistent offender whose imprisonment for *an extended term is necessary for protection of the public.* The court shall not make this finding unless the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older.

. . . .

(4) The defendant is a multiple offender whose criminal actions *were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public.* The court shall not make this finding unless:

(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony[.]

(Emphases added.)

In sentencing Defendant as a persistent offender, the court made the following "findings of fact":

**Sentence of imprisonment for class ... C felonies;** *ordinary terms.* A person who has been convicted of a ... class C felony may be sentenced to an indeterminate term of imprisonment.... When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:

. . . .
(2) *For a class C felony—5 years.*
The maximum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706–669.
(Emphases added.)

4. In light of the fact that *Kaua* was binding on the court, the court was correct in following precedent.

1. The Court finds that [Defendant] is a "persistent offender" within the meaning of Section 706–662(1) of the [HRS] because of the following facts:

a. [Defendant] was born on March 8, 1952 and was eighteen (18) years of age or older at the time of the commission of the offenses listed below.

b. On January 20, 1997, in Cr. No. 49175, [Defendant] was convicted of the offense of Rape in the Second Degree, an offense which constitutes a class B felony as defined by Act 9, S.L.H. 1972. The offense was committed on March 5, 1976. At all relevant times during these proceedings, [Defendant] was represented by counsel, to wit, Ed Worth and/or Marie Milks.

c. On June 27, 1996, in Cr. No. 95–2564, [Defendant] was convicted of the offense of Promoting a Dangerous Drug in the Second Degree, an offense which constitutes a class B felony as defined by the Hawaii Penal Code. The offense was committed on February 1, 1995. At all relevant times during these proceedings, [Defendant] was represented by counsel, to wit, Deputy Public Defender Debra Loy.

d. On October 15, 1996, in Cr. No. 96–1456, [Defendant] was convicted of the offense of Promoting a Dangerous Drug in the Second Degree, an offense which constitute a class B felony as defined by the Hawaii Penal Code. The offense was committed on October 12, 1995. At all relevant times during these proceedings, [Defendant] was represented by counsel, to wit, Deputy Public Defender Debra Loy.

2. The Court further finds that [Defendant] is a "persistent offender" whose commitment for an extended term is necessary for the protection of the public because of the following facts:

a. [Defendant's] criminal history includes eighty-two (82) arrests resulting in three (3) prior felony convictions in addition to convictions for twenty-seven (27) misdemeanor, petty misdemeanor and violations.

b. [Defendant] has an extensive criminal history, the characteristics of which have involved a felony conviction for the violent act of Rape in the Second Degree and two (2) separate convictions for Promoting a Dangerous Drug in the Second Degree.

c. [Defendant's] criminality has continued despite being sentenced to periods of both probation and incarceration in his prior convictions. In the instant case, a jury found [Defendant] guilty of possession of methamphetamine, drug paraphernalia and marijuana. *It is evident that [Defendant's] prior involvement with the criminal justice system has not deterred him from further criminal activity.*

d. *[Defendant] has failed to benefit from the criminal justice system.*

e. *[Defendant] has demonstrated a total disregard for the rights of others and has a poor attitude toward the law.*

f. *[Defendant] has demonstrated a pattern of criminality which indicates that he is likely to be a recidivist in that he cannot confirm his behavior to the requirement of the law.*

g. *Due to the quantity and seriousness of [Defendant's] past convictions and the seriousness of the instant offenses, [Defendant] poses a serious threat to the community and his long term incarceration is necessary for the protection of the public.*

3. Pursuant to consideration of the other sentencing factors under *HRS* Section 706–606, the Court further finds that extended term sentences need to be imposed to reflect the seriousness of the offenses, to promote respect for law, to provide just punishment for the offenses, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of [Defendant], *to provide [Defendant] with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

4. Based on the above, this Court further finds that [Defendant] is a "persistent offender," eligible for extended terms of imprisonment of ten (10) years for each of the class C felony offenses in Counts I and II.

(Emphases added.) In sentencing Defendant as a multiple offender, the court made the following "findings of fact":

1. The Court finds that [Defendant] is a "multiple offender" within the meaning of *HRS* Section 706–662(4)(a) because he has been sentenced for two (2) felonies, to wit:

Cr. No. 02–1–2128

*Count I:*

Promoting a Dangerous Drug in the Third Degree (*HRS* Section 712–1243; a class C felony)

*Count II:*

Unlawful Use of Drug Paraphernalia (*HRS* Section 329–43.5(a); a class C felony)

2. Upon consideration of the nature and circumstances of the offenses and the history and characteristics of [Defendant], as mandated by *HRS* Section 796–606(1), this Court further finds that [Defendant] is a "multiple offender" whose commitment for extended terms is necessary for the protection of the public because of the following facts:

a. [Defendant's] criminal history includes eighty-two (82) arrests resulting in three (3) prior felony convictions in addition to convictions for twenty-seven (27) misdemeanor, petty misdemeanor and violations.

b. [Defendant] has an extensive criminal history, the characteristics of which have involved a felony conviction for Rape in the Second Degree and two (2) separate convictions for Promoting a Dangerous Drug in the Second Degree.

c. [Defendant's] criminality has continued despite being sentenced to periods of both probation and incarceration in his prior convictions. In the instant case, a jury found [Defendant] guilty of possession of methamphetamine, drug paraphernalia and marijuana. *It is evident that [Defendant's] prior involvement with the criminal justice system has not deterred him from further criminal activity.*

d. *[Defendant] has failed to benefit from the criminal justice system.*

e. *[Defendant] has demonstrated a total disregard for the rights of other and has a poor attitude toward the law.*

f. *[Defendant] has demonstrated a pattern of criminality which indicates that he is likely to be a recidivist in that he cannot confirm his behavior to the requirement of the law.*

g. Due to the quantity and seriousness of [Defendant's] past convictions and the seriousness of the instant offenses, *[Defendant] poses a serious threat to the community and his long term incarceration is necessary for the protection of the public.*

3. Pursuant to consideration of the other sentencing factors under *HRS* Section 706–606, the Court further finds that the extended term sentences need to be imposed to reflect the seriousness of the offenses, to promote respect for law, to provide just punishment for the offenses, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of [Defendant], to provide *Defendant Rivera with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

4. Based on the above, this Court further finds that [Defendant] is a "multiple offender," eligible for extended terms of imprisonment of ten (10) years for each of the class C felony offenses in Counts I and II.

(Emphases added.)

The majority attempts to distinguish *Blakely* from this case on the grounds that (1) *Blakely* addresses "determinate" sentencing, as opposed to an indeterminate sentencing scheme, majority opinion at 159, 102 P.3d at 1057–58, and (2) *Blakely* concerned a fact (a determination of "deliberate cruelty") which in our jurisdiction would be "intrinsic" to a charge under our sentencing paradigm distinguishing "intrinsic" and "extrinsic" facts and, hence, would be decided by our juries, *id.* With all due respect, and accepting the language of the majority in *Blakely*

at face value, I do not believe that that decision can be parsed so narrowly.[5]

## II.

In *Blakely*, "second-degree kidnaping [was] a class B felony" punishable by "a term of ten years" under a Washington statute. —— U.S. at ——, 124 S.Ct. at 2535. Sentencing guidelines, however, established "a 'standard range' of 49 to 53 months" of imprisonment "for [the] . . . offense of second-degree kidnaping with a firearm." *Id.* "Pursuant to [a] plea agreement, the State [of Washington] recommended a sentence within the standard range of 49 to 53 months." *Id.* However, "the judge rejected the State's recommendation and imposed an exceptional sentence of 90 months—37 months beyond the standard maximum." *Id.* Under Washington law, "[a] judge may impose a sentence above the standard range if he finds substantial and compelling reasons justifying an exceptional sentence." *Id.* (internal quotation marks and citation omitted). The judge "justified the sentence on the ground that petitioner had acted with 'deliberate cruelty,' a statutorily enumerated ground ·for departure" from the standard range. *Id.* After a hearing, the judge "issued 32 findings of fact" in support of his sentence. *Id.*

The United States Supreme Court "reversed" the judgment. It noted that "[t]he facts supporting that finding" of " 'deliberate cruelty' " "were neither admitted by petitioner nor found by a jury." *Id.* at ——, 124 S.Ct. at 2537. It rejected the State's contention "that there was no *Apprendi* violation because the relevant 'statutory maximum' is not 53 months, but the 10–year maximum for class B felonies[.]" *Id.* The Court made clear "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by*

*the defendant." Id.* (emphasis in original). Consequently,

> the . . . "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. *When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority.*

*Id.* (emphasis in original and emphasis added) (internal quotation marks and citation omitted). The Supreme Court indicated that "[t]he judge in this case [then] could not have imposed the exceptional 90–month sentence solely on the basis of the facts admitted in the guilty plea[ ]" because "to justify an exceptional sentence . . . factors other than those which are used in computing the standard range sentence for the offense" must be "take[n] into account[.]" *Id.* (internal quotation marks and citation omitted). The fact that discretion is exercised in arriving at an enhanced sentence is not determinative inasmuch as the judge "cannot make that judgment without finding some facts to support it beyond the bare elements of the offense." *Id.* Hence, "[w]hether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence." *Id.* (emphases in original). Thus,

> labels do not afford an acceptable answer[ ] . . . as . . . to the constitutionally novel and elusive distinction between "elements" and "sentencing factors[ ]" [because] . . . the relevant inquiry is not of form, *but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?*

*Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348 (emphasis added) (internal quotation marks and citations omitted) (brackets omitted).[6]

---

**5.** I do not agree that *Blakely* is a mere "gloss" on *Apprendi*, as the majority contends. Majority opinion at 156, 102 P.3d at 1054–55. *See Apprendi*, 530 U.S. at 497 n. 21, 120 S.Ct. 2348 (before *Blakely*, "express[ing] no view on the subject" of "determinate sentencing schemes"); *see also Blakely*, —— U.S. at ——, 124 S.Ct. at 2561 (Breyer, J., dissenting, joined by O'Connor,

J.) ("I would have thought the Court might have limited *Apprendi* so that its underlying principle would not undo sentencing reform efforts. Today's case dispels that illusion.").

**6.** The distinction between "sentencing facts" and "elements of crimes" was the way by which

The Supreme Court explained that "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the *functional equivalent of an element of a greater offense* than the one covered by the jury's guilty verdict." *Apprendi*, 530 U.S. at 496 n. 19, 120 S.Ct. 2348 (emphasis added).

### III.

In this case the "ordinary" "maximum" term for each of the offenses under Counts I and II is five years' imprisonment. HRS § 706-660(2); *see supra* note 3. Upon conviction, then, five years' imprisonment would be the "prescribed statutory maximum," *Blakely*, —— U.S. at ——, 124 S.Ct. at 2536 (internal quotation marks and citation omitted), for the crime involved because five years is "the maximum [sentence] a [judge] may impose *without* any additional findings," *id.* at ——, 124 S.Ct. at 2537 (emphasis in original). An extended sentence under HRS § 706-662 "describe[s] an increase beyond the maximum authorized statutory sentence," *i.e.,* beyond one that can be imposed simply on the jury verdict, and thus "is the functional equivalent of an element of a greater offense" that was not "covered by the jury's guilty verdict." *Apprendi*, 530 U.S. at 496 n. 19, 120 S.Ct. 2348.

In extending the ordinary sentence, *i.e.,* increasing the penalty from five years' imprisonment to ten years pursuant to HRS § 706-662 on each one of the counts, the court was required (after establishing threshold facts) to determine that doubling the sentence was "necessary for the protection of the public." HRS § 706-662. As in *Blakely*, the court "cannot make that judgment without finding some facts to support it *beyond the bare elements of the offense.*" *Blakely*, —— U.S. at —— n. 8, 124 S.Ct. at 2538 n. 8 (emphasis added). Thus, the court made "findings of fact" to support its "judgment" that the sentence was necessary to protect the public based on facts beyond those established by the guilty verdict.

Similar to *Blakely*, "factors other than those which are used in computing the standard range sentence for the offense" were "considered." —— U.S. at ——, 124 S.Ct. at 2537. Tellingly, then, the court could not have imposed the extended sentence simply on the strength of the jury's verdict; rather, it was required to make supplemental findings justifying a sentence double that which could be authorized under the jury verdict. Consequently, in the instant case, "the verdict alone [did] not authorize the sentence." *Id.* But "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment' . . . and the judge exceeds his proper authority," *id.,* and the sentence must be vacated.

### IV.

Although *Blakely* concerned a "determinate" sentencing scheme, the Supreme Court nowhere limited the Sixth Amendment's reach in *Blakely* to only such approaches.[7] Thus, that our sentencing structure may generally be denominated an "indeterminate" one is not a basis for distinguishing *Blakely.* Contrasting determinate sentencing from indeterminate sentencing in response to Justice O'Connor's dissent, the *Blakely* majority apparently posited as an indeterminate sentencing procedure, one in which the jury's guilty verdict would authorize the judge's sentence without the finding of any additional facts: "In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail." —— U.S. at ——, 124 S.Ct. at 2540. Ordinarily, then, under an indeterminate scheme of sentencing such as our own, the ordinary indeterminate sentence imposed by the court is not the subject of further jury decision because the indeterminate sentence is authorized by the jury's verdict. That is not the case here, however. The extended

---

"legislatures could indicate whether a judge or a jury must make the relevant factual determination." *Blakely*, —— U.S. at ——, 124 S.Ct. at 2560 (Breyer, J. dissenting, joined by O'Connor, J.).

7. As the Court's majority said, "[t]his case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment." *Blakely*, ——. U.S. at ——, 124 S.Ct. at 2540.

sentences have been imposed pursuant to a separate non-jury extended term proceeding, tacking on an additional five years to the indeterminate sentence of five years on each of Count I and Count II.

Hence, in the case before us, it is the findings of the *court*, based on facts and factors not submitted to the jury, that resulted in a prison term beyond that simply attributable to the guilty verdict. In imposing the extended sentences, the court was not deciding a sentence within fixed statutory limits, (as in the example of indeterminate sentencing provided by the *Blakely* majority referred to *supra* ), but whether to impose an additional term of imprisonment. By rough analogy, the presumptive standard range of forty-nine to fifty-three months for the offense in *Blakely* is akin to the five-year indeterminate sentence in the instant case, and the "sentence enhancement" by the Washington judge extending the sentence to ninety months based upon findings of "deliberate cruelty" is the equivalent of the extended term proceeding based on persistent and multiple offender findings in this case. The extended term proceeding under the logic of *Blakely* would be a proceeding subject to the right to jury trial under the Sixth Amendment.

Even outside that analogy, the manifest purpose of the extended term hearing conducted here was to enlarge the indeterminate sentence of five years to ten years on each of Counts I and II. Insofar as an extended term is imposed in addition to the ordinary indeterminate sentence authorized by the jury's verdict, that extended term does not fall within the maximum sentence a judge may impose by virtue of a guilty verdict. Consequently, with respect to extended sentences under our "indeterminate" sentencing structure, "the required finding[s by the court] expose the defendant to a greater punishment than that authorized by the jury verdict[.]" *Id.* at 494, 120 S.Ct. 2348.

### V.

That in *Blakely,* the judge found the "petitioner had acted with 'deliberate cruelty,'" *id.* at ——, 124 S.Ct. at 2535, was not dispositive in that case and does not afford a basis for distinguishing the instant case. As the Supreme Court pointed out, "[w]hether the judge's authority to impose an enhanced sentence depends on finding a specified fact ..., one of several specified facts ..., or ... aggravating fact" does not alter the "case that the jury's verdict alone [did] not authorize the sentence." *id.* at ——, 124 S.Ct. at 2538. "Labels ... [such] as ... 'elements' and 'sentencing factor,'" then, are not the "answer." *Apprendi,* 530 U.S. 466, 494, 120 S.Ct. 2348, 147 L.Ed.2d 435. To reiterate, the "relevant inquiry is ... [the] *effect*—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* (emphasis added). Therefore, whether the required finding of "necessary for the protection of the public," HRS § 706–662, is viewed as an "elemental" fact or a "sentencing factor," 530 U.S. at 467, 120 S.Ct. 2348, or that the supporting subsidiary facts found by the court constitute part of such facts or factors, "it remains the case" that the *effect* of the court's pronouncement under HRS § 706–606 subjects the defendant to greater punishment than that which could be imposed on the basis of the guilty verdict only.

### VI.

It begs the question, then, to find *Apprendi* inapplicable on the basis that an extended sentence hearing is a two "step" procedure, the first requiring

a finding beyond a reasonable doubt that the defendant is a multiple offender, which finding may not be made unless the defendant is being sentenced for two or more felonies or is under sentence for a felony and the maximum terms of imprisonment authorized for the defendant's crimes met certain requisites[ ] ... [and the] second[,] ... to determine whether the defendant's commitment for an extended term is necessary for the protection of the public[,] ... [the latter] deal[ing] with the subject matter of ordinary sentencing[,]

*Kaua,* 102 Hawai'i at 9, 72 P.3d at 481 (internal quotation marks and citations omitted). The criteria for extended terms rest not only on the foundational facts as to prior felonies

or pending or past felony sentences, *see* HRS § 706–662, *supra*, but also on such facts as would support the determination that an extended term in the particular case is necessary for the protection of the public. Because such subsidiary facts are required in addition to the prescribed foundational ones to arrive at the ultimate finding, *see* findings by the court, *supra*, these subsidiary facts or "additional findings" are "essential to the punishment," *Blakely*, —— U.S. at ——, 124 S.Ct. at 2537, and as a result, must be found by a jury beyond a reasonable doubt, *id.*, and not merely treated as "the subject matter of ordinary sentencing[,]" *Kaua*, 102 Hawai'i at 12, 72 P.3d at 484 (quoting *Carvalho*, 101 Hawai'i at 111, 63 P.3d at 419) (quoting *Huelsman*, 60 Haw. at 79, 588 P.2d at 400).

It would appear inconsistent with *Apprendi* and *Blakely*, then, to hold, for example, that "the ultimate finding that [a defendant] was a 'multiple offender' whose extensive criminal actions warranted extended prison terms was [one] properly within the province of the sentencing court." *Id.* at 13, 72 P.3d at 485. Hence, *Kaua's* emphasis on the "extrinsic" nature of factors involved in such an "ultimate finding" as being "separable from the offense itself" because "involv[ing] consideration of collateral events or information" is incorrect. *Id.* at 11, 72 P.3d at 483 (quoting *State v. Tafoya*, 91 Hawai'i 261, 271, 982 P.2d 890, 900 (1999)). For such events or information constitute the basis for findings necessary for an extended sentence. Because they do, under *Blakely*, they are the very matters that must be considered by a jury. The ultimate finding, then, is not susceptible to an "ordinary sentence" procedure. *Id.* at 12, 72 P.3d at 484.

The "intrinsic-extrinsic" framework referred to in *Kaua* is an analogue of the "distinction between 'elements' and 'sentencing factors'," *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348, eschewed by the Supreme Court

majority in favor of a focus on "the effect" of the sentencing court's ultimate finding and the answer to the question of whether such a "finding expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict[.]" *Id.* On the record in this case, the answer would be in the affirmative. As indicated by the Supreme Court, it is the "effect" brought about by the court's action that is determinative rather than the "labels" attached to the sentencing procedures. *Id.* This case involves "a sentence greater than what state law authorized on the basis of the verdict alone." *Blakely*, —— U.S. at ——, 124 S.Ct. at 2538. Inasmuch as it does, under *Blakely*, the extended sentences infringe on the "reservation of jury power[,]" *id.* at ——, 124 S.Ct. at 2540, in the Sixth Amendment.

## VII.

I cannot agree with the majority's rationale for distinguishing our "intrinsic-extrinsic" paradigm from the implications of *Blakely*. With all due respect, I believe the majority's position rests on at least two faulty premises. First, the majority maintains there exists an equation between consideration of the "protection of the public" factor as part of the general sentencing considerations under HRS § 706–606 and the "protection of the public" determination under HRS § 706–662 such that in extended term sentencing "the sole determining factor remaining that increases the penalty" are "the prior conviction[s]" which are not subject to jury determination under *Apprendi* or *Blakely*. Majority opinion at 162–63, 102 P.3d at 1060–61. The fallacy, of course, is that the determinations are not the same.

On its face, HRS § 706–606 (1993) sets forth a multiple factor list to generally guide the court in sentencing.[8] It does not author-

---

8. HRS § 706–606 states as follows:

**Factors to be considered in imposing a sentence.** The court, in determining the particular sentence to be imposed, shall consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed:

 (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;

 (b) To afford adequate deterrence to criminal conduct;

 (c) *To protect the public from further crimes of the defendant;* and

ize any particular sentence. HRS § 706–606 does not direct a sentencing court to prefer one consideration over the other or to give more weight to one factor than the other. Among the options available in arriving at an appropriate sentence is probation, HRS § 706–620 (Supp.2003),[9] a suspended sentence, HRS § 706–622 (1993),[10] and imprisonment, *e.g.*, HRS § 706–660.[11] As applicable here, HRS § 706–660 authorizes, *inter alia*, an indeterminate "ordinary" prison term of five years for a class C felony. Applying HRS § 706–606, a sentencing court may consider any number of those factors in deciding whether a defendant should be imprisoned or be given an alternative sentence in a particular case. While pursuant to HRS § 706–606 the court must *consider* the protection of the public as one of other multiple factors, it is not required to *find* upon express facts that protection of the public mandates an indeterminate sentence, as is required by HRS § 706–662 for an extended sentence.

Thus, the commentary to HRS § 706–660 draws a distinction between an "ordinary" indeterminate sentence under HRS § 706–660 and an enhanced sentence under a provision like HRS § 706–662:

> With the exception of special problems calling for extended terms of incarceration as provided in subsequent sections, it provides for only one possible maximum

length of imprisonment for each class of felony. . . .

> Once the court has decided to sentence a felon to imprisonment, the actual time of release is determined by parole authorities. Having decided on imprisonment, the court must then impose the maximum term authorized.
>
> . . . .
>
> *[T]his section embodies a policy of differentiating exceptional problems calling for extended terms of imprisonment from the problems which the vast majority of offenders present[.]*

(Emphasis added.) (Footnotes omitted.) Quoting from an American Bar Association study, the commentary continues as follows:

> [M]any sentences authorized by statute in this country are, by comparison to other countries and in terms of the needs of the public, excessively long for the vast majority of cases. Their length is undoubtedly the product of concern for protection against the most exceptional cases, most notably the particularly dangerous offender and the professional criminal. It would be more desirable for the penal code to differentiate explicitly between most offenders and such exceptional cases, by providing lower, more realistic sentences for the former and authorizing a special term for the latter.

> (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) The kinds of sentences available; and
> (4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

(Emphasis added.)

9. HRS § 706–620, entitled "Authority to withhold sentence of imprisonment," states as follows:

> A defendant who has been convicted of a crime may be sentenced to a term of probation unless:
> (1) The crime is first or second degree murder or attempted first or second degree murder;
> (2) The crime is a class A felony, except class A felonies defined in chapter 712, part IV, and by section 707–702;

> (3) The defendant is a repeat offender under section 706–606.5;
> (4) The defendant is a felony firearm offender as defined in section 706–660.1(2); or
> (5) The crime involved the death of or the infliction of serious or substantial bodily injury upon a child, an elder person, or a handicapped person under section 706–660.2

(Emphasis added.)

10. HRS § 706–622 states as follows:

> **Requirement of probation; exception.** *When a person who has been convicted of a felony is not sentenced to imprisonment, the court shall place the person on probation. Nothing in this part shall prohibit the court from suspending any sentence imposed upon persons convicted of a crime other than a felony.*

(Emphasis added.)

11. *See supra* note 3.

*The sentences provided in this section, when compared to the extended sentences authorized in subsequent sections seek to achieve the recommended explicit differentiation.*

(Quoting ABA Standards § 2.5.) (Ellipsis points and brackets in original.) (Footnote omitted.) Hence, in the "subsequent sections" referred to, such as HRS § 706–661, an "extended term[ ]" for a class C felony is set at ten years, HRS § 706–661(4) (Supp. 2003).[12] That term would be applied on conviction of a class C felony in those cases designated in HRS § 706–662 where, as here, the court finds a defendant a persistent offender, HRS § 706–662(1), or a multiple offender, HRS § 706–662(4).

An extended term, then, is intended to "explicit[ly] differentiat[e]," commentary to HRS § 706–660, "exceptional cases," *id.*, from "ordinary" indeterminate terms that are set forth in HRS § 706–660, for "most offenses." Thus, in contrast with HRS § 706–606, which treats protection of the public as one consideration among others in generally guiding the sentencing court as to whether to impose an ordinary sentence of imprisonment under HRS § 706–660, or another sentencing alternative such as probation or a suspended sentence, HRS § 706–662(1) and (4) focus upon whether the protection of the public warrants a term beyond the ordinary sentence. Generally, then, the protection of the public factor in HRS § 706–606 is one among several considerations in deciding whether to sentence a defendant to an ordinary imprisonment term under HRS § 706–660 or probation or suspension of sentence, as contrasted to HRS § 766–662 in which the question is not whether the protection of the public warrants a prison term or not, but whether it requires the length of the term served to be beyond that which would be imposed in "the vast majority of case[s]." Commentary to HRS § 706–660.

Accordingly, "the determination that it is 'necessary for protection of the public[,]' HRS § 706–662[,]" is decidedly *not* "effectively the same one that the sentencing court has made upon concluding that a defendant should be sentenced to an indeterminate maximum term of imprisonment rather than probation[,]" as the majority contends. Majority opinion at 162, 102 P.3d at 1060. This contextual misapprehension of the standard leads to the fallacy in the majority's conclusion that "inasmuch as both HRS §§ 706–606 and 706–662 require the determination of whether the sentence imposed is needed to protect the public, the *sole* determining factor remaining that increases the penalty under Hawaii's extended term sentencing in HRS § 706–662(1) is the fact of a prior conviction, ... expressly authorized ... in *Apprendi* and again in *Blakely*[ ] ... [and similarly t]he multiple offender determination, pursuant to HRS § 706–662(4)(a), mirrors the prior conviction exception in *Apprendi*[.]" Majority opinion at 162–63, 102 P.3d at 1060–61 (emphasis in original).

Under our penal code, then, there is a substantial difference between choosing between probation and the ordinary indeterminate sentence, and between an indeterminate sentence and an extended sentence. For purposes of *Apprendi* and *Blakely*, the distinction is even more apparent for inasmuch as in the former category, both a sentence of probation or an indeterminate sentence are authorized by the jury verdict, in the latter category only the indeterminate sentence (and not the extended sentence) can legitimately be the product of a jury verdict.

VIII.

The second mistaken premise is the majority's proposition that "[h]ad the circuit court

12. HRS § 706–661(4) states as follows:
**Sentence of imprisonment for felony; extended terms.** In the cases designated in section 706–662, a person who has been convicted of a felony may be sentenced to an extended indeterminate term of imprisonment. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:

. . . .
(4) For a class C felony-indeterminate ten-year term of imprisonment.
The minimum length of imprisonment for [paragraph] ... (4) shall be determined by the Hawaii paroling authority in accordance with section 706–669.

sentenced Rivera to consecutive terms of imprisonment in Counts I and II, the effect would have been a ten-year indeterminate maximum term of imprisonment, a term *equal* to the two *concurrent* ten-year extended terms of imprisonment that the circuit court actually imposed in this case[,]" and, thus, "[i]t defies logic that the circuit court could ... impose the same ten-year sentence, comprised of two consecutive·five-year indeterminate maximum terms, under ordinary sentencing principles, but run afoul of *Blakely* by imposing concurrent ten-year extended terms of imprisonment[.]" Majority opinion at 164, 102 P.3d at 1062 (emphases in original).

Obviously, the court did not sentence Defendant to serve the ordinary five-year prison term in Count I, consecutive to the ordinary five-year prison term in Count II. And just as clearly it had the discretion to do so under HRS § 706–668.5. *See also supra* note 3. HRS § 706–668.5(1) directs that "[m]ultiple terms of imprisonment imposed at the same time run concurrently unless the court orders," and HRS § 706–668.5(2) states that "[t]he court in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706–606." That both the prosecution and the court believed imposition of consecutive prison terms under Counts I and II was not appropriate underscores the infirmity of the majority's argument.

The parties and the court apparently perceived what should be manifest—that there is a substantial difference between two ordinary five-year terms served consecutively and two extended ten-year terms served concurrently. The fact that the two consecutive five-year terms amount to a ten-year indeterminate term and the two ten-year extended terms run concurrently, does not mean that the minimum terms to be actually served as set by the paroling authority would be the

same in both cases. The defendant who must serve an extended sentence faces a greater HPA minimum sentence determination[13] than the defendant who must serve consecutive terms, even when both sentences are quantitatively equal.

When setting a defendant's minimum sentence, the HPA considers six "aggravating" factors that "may be accorded weight *in favor of a longer minimum sentence* of imprisonment[,]" including whether the "inmate is a *persistent offender*, professional criminal, dangerous person, *multiple offender*, or offender against the elderly, handicapped or minor, *and sentenced to an extended period of imprisonment.*"[14] Hawaii Administrative Rules (HAR) § 23–700–25(f) (1992) (emphases added). Thus, unlike a sentence of two consecutive five-year terms, a sentence of two ten-year *extended* terms to run concurrently exposes the defendant to a higher minimum sentence. Moreover, because the HPA considers the "prisoner's *criminal history* and character" in determining the minimum term of imprisonment, HRS § 706–669(8) (1993), it is free to consider *prior* extended terms. *See* HAR § 23–700–23(a) (requiring the HPA to consider the "nature and circumstances of the offense and *the history* and characteristics of the inmate") and *Guidelines for Establishing Minimum Terms of Imprisonment*, Hawai'i Paroling Authority (July 1989) (establishing that one of the "three areas of focus" in the guidelines is "the offender's *criminal history*" (emphasis added)). Should a defendant who has served an extended term be convicted of another crime in the future, the HPA would consider the prior extended term as part of the defendant's "criminal history." The effect, then, is that the defendant with an *extended* term on his or her record faces greater consequences than the defendant who merely serves consecutive terms.

Therefore, such "ten year sentences" are in fact not "the same" as the majority main-

---

**13.** HRS § 706–669 vests the HPA with authority to fix "the minimum term of imprisonment to be served before the prisoner shall become eligible for parole." HRS § 706–669(1) (1993).

**14.** The HPA has the authority to "establish guidelines for the uniform determination of minimum

sentences which shall take into account both the nature and degree of the offense of the prisoner and the *prisoner's criminal history* and character." HRS § 706–669(8) (1993) (emphasis added).

tains. The prosecution, the defense, and the court accurately perceived that they are not, as should this court. Because the court did impose extended terms and not hypothetical five-year consecutive terms, and such extended terms could only be imposed on findings beyond that covered by the jury verdict, *Blakely* would mandate a resentencing in this case.